BLANK ROME LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

FARENCO SHIPPING CO. LTD.,

Plaintiff,

v.

AQUAVITA INTERNATIONAL S.A.,

Defendant.

08 Civ. 4882 (WHP)

**AMENDED VERIFIED COMPLAINT**

---

Plaintiff FARENCO SHIPPING CO. LTD. ("FARENCO"), as Owner of the M/V JIN XING, by its attorneys Blank Rome LLP, complaining of the above-named Defendant AQUAVITA INTERNATIONAL S.A. ("Aquavita"), alleges upon information and belief as follows:

1.    This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has subject matter jurisdiction.

2.    At all material times, FARENCO was and now is a foreign company organized and existing under the laws of the British Virgin Islands and the disponent owner of the Motor Vessel JIN XING (the "Vessel").

3.    At all material times, defendant Aquavita was and now is a corporation organized and existing under the laws of the Marshall Islands.

## THE BASIC FACTS

4.    Farenco chartered the Vessel from Daeyang (HK) Shipping Co. Ltd. under a charter dated April 19, 2007 (the "Head Charter"). Ex. 1 to the Rule B affidavit ("Aff.").

5.    As recorded in a "fixture recap" dated on or about January 30, 2008, Farenco sub-chartered the Vessel to Aquavita (the "Charter"). The Charter incorporates the terms of the Head Charter except as provided therein. Aff. Ex. 2.

6.    Farenco contends that Aquavita purchased and loaded bunkers (marine fuel oil) that were off-specification leading to the damages asserted and identified below.

7.    Claims under the Charter are subject to English law and London arbitration. This action is expressly filed without prejudice to that right of arbitration.

## COUNT I

## RULE B RELIEF

8.    Plaintiff repeats paragraphs 1 through 7 as if fully set forth herein.

9.    Plaintiff seeks issuance of process of maritime attachment so that it may obtain security for its claims including its English attorneys' fees and arbitrators' fees which are routinely awarded in London arbitration and no security for Plaintiff's claim has been posted by Aquavita or anyone acting on its behalf to date.

10.    At best as can now be estimated, Plaintiff expects to recover the following amounts in the arbitration:

| 1. | Value of new bunkers supplied at Dakar to replace the bad quality bunker (about USD 400,000 | \$400,000 |
| 2. | Port costs/surveyor costs at Dakar (about Euro 30,000) | \$60,000 |
| 3. | Daily hire (USD 60,000 per day) losses with present TC Charterers Korea Line Corp from 30 Apr to 30 May | \$1,800,000 |
| 4. | Costs of replacing the spares of the Main Engine and Auxiliary Engine (estimated) | \$300,000 |
| 5. | Costs of debunkering and necessary course deviation | \$200,000 |
| 6. | Estimated Recoverable English Lawyers and Arbitrators' Fees & "Costs" | \$200,000 |
| 7. | Interest over the course of 3 years at prime rate average of 8% per annum: | \$700,000 |
| | **TOTAL**: | \$3,660,000 |

11.    Defendant cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"), but is believed to have, or will have during the pendency of this action, assets in this jurisdiction.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against Aquavita, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That since Aquavita cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Aquavita's tangible or intangible property or any other funds held by any garnishee, which are due and owing to

Aquavita up to the amount of $3,660,000 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

C.      That this Court retain jurisdiction over this matter through the entry of a judgment or award associated with the pending claims including appeals thereof.

D.      That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: New York, NY
        May 29, 2008

Respectfully submitted,
BLANK ROME LLP
Attorneys for Plaintiff

By

Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
New York, NY 10174
Tel.: (212) 885-5000

## **VERIFICATION**

STATE OF NEW YORK    )
                                         : ss.:
COUNTY OF NEW YORK    )

Jeremy J.O. Harwood, being duly sworn, deposes and says:

1.    I am a member of the bar of this Honorable Court and of the firm of Blank Rome LLP, attorneys for Plaintiff.

2.    I have read the foregoing Complaint and I believe the contents thereof are true.

3.    The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4.    The sources of my information and belief are documents provided to me and statements made to me by representatives of Plaintiff.

_____
Jeremy J.O. Harwood

Sworn to before me this
29th day of May 2008

_____
Notary Public

NEAL MITCHELL
Notary Public, State of New York
No. 01MI6114408
Qualified in New York County
Commission Expires Aug. 16, 20__

# *Time Charter*

GOVERNMENT FORM

*Approved by the New York Produce Exchange*

November 6th, 1913-Amended October 20th, 1921;August 6th,1931;October 3rd,1946

1.  **This Charter Party,** made and concluded in................................*Beijing*............**19**<sup>th</sup>............day of.........*April*......*2007*
2.  Between...................................................**Daeyang(HK) Shipping Co., Ltd, Hong Kong**......*as disponent*.................................................
3.  Owners of the good............*Hong Kong flag*...........(Steamship/Motorship)*M.V. " JIN XING "*........of.........*See description Clause 45*.......
4.  of.............................tons gross register, and.......................tons net register, having engines of.............................indicated horse
5.      p                o                w              e              r
    and with hull, machinery and equipment in a thoroughly efficient state, and classed......................................................................
6.  at.............of about.............................cubic feet meters grain/bale capacity *in holds*, and about.............*metric*.................tons of
    2240lbs.
7.  deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity,
8.  allowing a minimum of fifty tons) on a draft of....feet..*meters*....inches on........*salt*............Summer freeboard, inclusive of permanent
        b                u                n              k              e              r              s              ,
9.  which are of the capacity of about.....................................tons of fuel, and capable of steaming, fully laden, under good weather
10. conditions *throughout the currency of this Charter Party* about..............knots on a consumption of about.....................tons of best Welsh
    coal
    best grade fuel oil best grade Diesel oil;
11. now *trading*.....................................................................................................................................................
12. and.....................**FARENCO SHIPPING CO., LTD**......as ...........Charterers of the City of.......*B.V.I.*..................................
13. **Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for
14. about *period of minimum 11 months / about 13 months, period in Charterers' option via safe anchorage(s), safe berth(s), safe port(s), always*
15. *afloat, always accessible, always within Institute Warranty Limits with bulk harmless lawful cargo (about means +/- 15days in Charterers' option)*
    ..........................................................................................................*within below mentioned trading limits.*
16. Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17. the fulfillment of this Charter Party. *Acceptance of delivery by Charterers shall not constitute any waiver of Owners' obligations hereunder.*
18. Vessel to be placed at the disposal of the Charterers, at *on dropping last outward sea pilot Oshima, Japan at any time day or night,*
19. Sundays and Holidays included (I.E. Tugs and pilots at Owners' account for bringing the vessel to open sea)
    in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in Clause No.6), as
20. the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in Clause No.5. Vessel on her delivery to be
21. ready to receive cargo with clean-swept holds *(see Clause 48)* and tight, staunch, strong and in every way fitted for the *ordinary cargo* service,
    having water ballast, winches and
22. donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the *cranes* winches at one and the
    same
23. time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful
24. merchandise, including petroleum or its products, in proper containers, excluding....*(See Clause 60)*.....................................................
25. (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk.
26. all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports in British North
27. America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or
28. Mexico,                  and/or            South            America
    and/or Europe
29. and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River, St. Lawrence between
30. October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White Sea, Black Sea and the Baltic,
31. *Trading within Institute Warranty Limits (see Clause 67). Vessels to be employed in lawful trade for the carriage of lawful cargo.*
32. ..........................................................................................................................................................
33. ..........................................................................................................................................................
34. as the Charterers or their Agents shall direct, on the following conditions:
35.    1. That the Owners shall provide and pay for all provisions, wages, *immigration* and consular shipping and discharging fees of the Crew ; *also*
    *consular fees needed because of the vessel's nationality or flag and also garbage removal* shall pay for the
36. insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including *fresh water for drinking* boiler water and
    *lubricating* maintain her class and keep

37.  the vessel in a thoroughly efficient state in hull, *cargo spaces,* machinery and equipment for and during the service *with all certificates to comply with current requirements at the ports of call and for and during the service, failing which Owners are responsible for all time lost and expenses incurred thereby.*

38.  2. That the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, ~~Pilotages,~~ *Canal Tolls, customary compulsory pilotages including Dardanelles/Bosporous and Torres Strait, Skaw, Japan Inland Seas,* Agencies, Commissions, ⋯

39.  Consular Charges (except those pertaining to the Crew), *whilst vessel is on hire,* and all other usual expenses except those before stated, but when the

vessel puts into

40.  a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

41.  illness of the crew to be for Owners account.    Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

42.  charter to be for Charterers account. ~~All other fumigaitions to be for Charterers account after vessel has been on charter for a continuous period~~

43.  ~~of six months or more.~~

44.  Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but

45.  Owners to allow them the use of any dunnage and shifting boards already aboard vessel.    Charterers to have the privilege of using shifting boards

46.  for dunnage, they making good any damage thereto.

47.  3. ~~That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on~~

48.  ~~board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than~~ ................... ~~tons and not more than~~

49.  .......... ~~tons and to be re-delivered with not less than~~ ....................................... ~~tons and not more than~~
     ~~t~~ ─────────── ~~o~~ ─────────── ~~n~~ ─────────── ~~s~~ ───────────.

50.  4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of ___*US$ 34,400 daily including overtime payable every 15 days in advance* ~~United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and~~

51.  ~~stores, on~~ ......................... ~~summer freeboard, per Calendar Month,~~ commencing on and from the day *and time* of her delivery, as aforesaid, and
     a                                                                                                                                        t

52.  and after the same rate for any part of a *day* ~~month~~ hire to continue until the hour of the day of her re-delivery, in like good order and condition, ordinary

53.  wear and tear excepted, to the Owners (unless lost) ~~at~~ *on dropping last outward sea pilot one safe port Aden/Japan range,*

54.  *including P.G. (in case PG then redelivery Passing Muscat Outbound)/India/People's Republic of China/Taiwan/Vietnam/Philippines/ Thailand/Indonesia/Malaysia, or Australia/New Zealand range or Skaw/Passero range including United Kingdom /Mediterranean/Black Sea range or Boston/Galveston range port in Charterers' option at any time day or night, Sundays and Holidays included...* unless otherwise mutually agreed. Charterers are to give Owners *approximate notice of redelivery area thence 25/20/15/10/7 days approximate redelivery date and intended port thence 5/3/2/1 days definite notice of redelivery date and port* ~~not less than~~ .............. *days*

55.  ~~notice of vessels expected date of re-delivery, and probable port~~

56.  5. Payment of said hire to be made in New York in cash in United States Currency, *(see Clause 46/50) 15 days* ~~semi-monthly~~ in advance, and for the last *15 days* ~~half month~~ or

57.  part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

58.  due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

59.  hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

60.  terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers.    ~~Time to count from 7 a.m. on the working day~~

61.  ~~following that on which written notice of readiness has been given to Charterers or their agents before 4 p.m ., but if required by Charterers, they~~

62.  ~~to have the privilege of using vessel at once, such time used to count as hire.~~

63.  Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, *subject to Owners' prior approval* by the Charterers or their agents, subject

64.  to 2¼% commission and such advances shall be deducted from the hire.    The Charterers, however, shall in no way be responsible for the application

65.  of such advances.

66.  6. That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or *safe* place *and any safe anchorage* that Charterers or their Agents may

67.  direct, provided the vessel can safely lie always afloat at any time of tide *(see also Clause 15),* ~~except at such places where it is customary for similar size vessels to safely~~

68.  ~~lie aground.~~

71.  7. That the whole reach of the Vessel's Hold, ~~Decks,~~ and usual places of loading (not more than she can reasonably stow and carry), also

72.  accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73.  tackle, apparel, furniture, provisions, stores and fuel.    ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers~~

74.  ~~paying Owners~~ .............. ~~per day per passenger for accommodations and meals.    However, it is agreed that in case any fines or extra expenses~~
     ~~a~~ ───────────── ~~r~~ ───────────── ~~e~~

75.  ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.~~ *No passengers allowed.*

76.  8. That the captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77.  boats.    The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

2

78. agency; and Charterers are to load, stow, and trim, *discharge and tally the cargo,* the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for

79. cargo as presented, in *strict* conformity with Mate's or Tally Clerk's receipts. *No through Bills of lading to be issued during the currency of this Charter.*

80. 9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81. receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments

82. 10. That the Charterers shall have permission to appoint a Supercargo, who shall ~~accompany the vessel and~~ see that voyages are prosecuted

83. with the utmost despatch.    He is to be furnished with free accommodation, *if available,* and same fare as provided for Captain's table, Charterers paying at the

84. rate of **$5.00** per day.    Owners to victual pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

85. Clerks, stevedore's Foreman, etc, Charterers paying ~~at the current rate per meal~~ *US$ 1,300 (One thousand Three hundred dollars) per month pro-rata for all such cables/victualling/entertainment as per Clause 43.*

86. 11. **(See Clause 30)** ~~That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the~~

87. ~~Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their agents, and furnish the Char-~~

88. ~~terers, their Agents or supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-~~

89. ~~sumption of fuel.~~

90. 12. That the Captain shall use diligence in ~~caring~~ **the care** for the ventilation of the cargo. *Vessel will be held responsible for any damage to the cargo caused by inadequate ventilation or caused by water through ventilators and leakage of water and/or oil from pipes and /or valves and /or tank etc on board, due to wear and tear of the above or any other cause.*

91. 13. ~~That the Charterers shall have the option of continuing this charter for a further period of~~ ..........................................................................

92. ......................................................................................................................................................................................................

93. ~~on written notice thereof to the Owners or their Agents~~ .............~~days previous to the expiration of the first-named term, or any declared option.~~

94. 14. That if required by Charterers, time not to commence before.................*18ᵗʰ July, 2007*...............and should vessel

95. not have *been delivered* ~~given written notice of readiness~~ on or before......*18ᵗʰ August,2007*...~~but not later than 4 p.m.~~ Charterers or their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. *Owners will give Charterers not less than 25/20 days approximate notice of vessel's expected date of delivery and 15/10/7/5/3/2/1 days notice of delivery. Owners to narrow 15days spread lay/can together with 25days delivery notice. Owners to narrow the laycan to 7 days spread further together with 15 days dely notice.*

96. 15. That in the event of the loss of time from *default and /or* deficiency of men or stores, fire, breakdown or damages to hull, machinery or equipment,

97. grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause

98. preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost ; *until the vessel has returned to the same or equivalent position* and if upon the voyage the speed by reduced by

99. defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

100. thereof, and all extra expenses shall be deducted from the hire.

101. 16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

102. returned to the Charterers at once.    The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

103. Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

104. The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

105. purpose of saving life and property.

106. 17. That should and dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three Persons at *London* ~~New York,~~

107. one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for

108. the purpose of enforcing any award, this agreement may be made a rule of the Court. *English Law to apply.* The Arbitrators shall be commercial *shipping* men.

109. 18. That the Owners shall have a lien upon all cargoes, and all sub-freights for any amounts due under this charter, including General Aver-

110. age contributions, and the Charterers to have a lien on the ship for all monies paid in advance and not earned, and any overpaid hire or excess

111. deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which

112. might have priority over the title and interest of the owners in the vessel.

113. 19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

114. Crew's proportion.    General average shall be adjusted, stated and settled, according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of

115. York-Antwerp Rules ~~1924,~~ *1974 or amended 1990 at London.* ~~at such port or place in the United States as may be selected by the carrier, and as to matters not provided for by these~~

116. ~~Rules, according to the laws and usages at the port of New York.    In such adjustment disbursements in foreign currencies shall be exchanged into~~

117. ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~

3

118. ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship.   Average agreement or~~
119. ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods.   Such cash deposit as the carrier~~
120. ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~
121. ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.   Such deposit shall, at the option of the~~
122. ~~carrier, be payable in United States money and be remitted to the adjuster.   When so remitted the deposit shall be held in a special account a the~~
123. ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~
124. ~~United States money.~~
125. ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~
126. ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~
127. ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~
128. ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~
129. ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~
130. ~~ships belonged to strangers.~~   *Hire not to contribute to General Average.*
131. Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.
132.     20. Fuel used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed to as to quantity and the
134. cost of replacing same, to be allowed by Owners. *No deductions are to be made by Charterers for galley fuel.*
135.     21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~
136. ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~
137. ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~
138. .................................................................................................................................................................................................
139. .................................................................................................................................................................................................
140.     22. *Maximum in accordance with description Clause* ~~Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks)~~
    ~~capable of handling lifts up to three tons, also~~
141. ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~
142. ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account.   Owners also to provide on the vessel lanterns and oil for~~
143. ~~night work and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense.~~
144. ~~Charterers to have the use of any gear on board the vessel.~~ *Owners to provide sufficient light for night work as on board and to maintain same in*
    *efficient working order.*
145.     23. Vessel to work night and day, if required by Charterers, ~~and all winches to be at~~ Charterers' disposal during loading and discharging
146. ~~steamer to provide one winchmen per hatch to work winches day and night, as required, Charters agreeing to pay officers, engineers, winchmen,~~
147. ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles.   If the rules of the~~
148. ~~port, or labor unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers.   In the event of a disabled winch or winches, or~~
149. ~~insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned~~
150. ~~thereby.~~
151.     24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained
152. in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels;
153. etc.," in respect of all cargo shipped under this charter to or from United States of America.   It is further subject to the *General Clause*
    *Paramount* ~~following clauses, both~~
154. ~~of which are to be included in all bills of lading issued hereunder:~~
155.                                         ~~U.S.A. Clause Paramount~~
156. ~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April~~
156. ~~16,1936,which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of~~
157. ~~any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act.   If any term of this bill of lading~~
158. ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~
159.                                         ~~Both to Blame Collision Clause~~
160. ~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the~~
161. ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried~~
162. ~~hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss~~
163. ~~or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~
164. ~~carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her~~
165. ~~owners as part of their claim against the carrying ship or carrier.~~
166.     25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be with-
167. drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
168. port or to get out after having completed loading or discharging. *Vessel not to follow ice breakers, not to force ice. Vessel is sailing in ice infested*
    *waters always to be for subject to Master's approval.*
169. 26. Nothing herein states is to be construed as a demise of the vessel to the Time Charterers.   The owners to remain responsible for the
170. navigation of the vessel, *acts of pilots and tugboats*, insurance, crew and all other matters, same as when trading for their own account.

4

171. 27.   A commission of 2¼ **1.25** per cent is payable by the Vessel and Owners to ***Shindong***
172. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
173. 28.   An address commission of 2¼ **3.75** per cent payable to.....................***Charterers*** .....................on the hire earned and paid under this
C              h              a              r              t              e              r                   .

   Clauses No. 29-114 including "Both to Blame Collision Clause", "New Both to Blame Collision Clause", "New Jason Clause", "General
   Average and the New Jason Clause", "BIMCO Conwartime 2004" , "Canadian Clause Paramount", " U.S.A. Clause Paramount" and
   "BIMCO ISPS Clause for time charter parties" as attached are deemed to be incorporated in this Charter Party.


   **OWNERS**                                                        **CHARTERERS**




---------------------------------------------------------              ---------------------------------------------------------
----

5

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

**Clause 29. P and I Bunker Clause**
This ship shall have the liberty as part of the contract voyage to proceed to any port or ports at which bunker oil is available for the purpose of bunkering at any stage of the voyage whatsoever and whether such ports are on or off the direct and/or customary route or routes between any of the ports of loading or discharge named in this Charter Party and may there take oil bunkers in any quantity in the discretion of Owners even to the full capacity of fuel tanks and deep tanks and any other compartment in which oil can be carried, whether such amount is or is nor required for the chartered voyage.

**Clause 30.**
Charterers shall furnish the Master from time to time with all requisite instructions and sailing directions in writing or by telegram and the Master shall keep a full and correct Deck and Engine logs in English of the voyage or voyages showing inter-alia the course of the vessel and distance run and the consumption of fuel oil, which is to be patent to the Charterers or their Agents, a true copy of which is to be sent to Charterers from each port of call on the voyage and immediately after completion of the voyage, together with any other information which the Master deems necessary.

**Clause 31.**
Bunkers on delivery about 600 metric tons of I.F.O. RME 180 and about 50 metric tons of M.D.O.
Bunkers on redelivery about same quantity as on delivery. Bunker price both ends US$350(three hundred and fifty dollars) per metric ton for I.F.O. and US$650(six hundred and fifty dollars) per metric ton for M.D.O.

Charterers have the option to supplying bunkers before delivery at Charterers' cost/expenses subject shipyard schedule.

Charterers/Owners allowed to replenish additional bunkers if necessary at yard/last disport before delivery/redelivery at Charterers/Owners account provided the same not interfere with proper operation of the vessel.

If RME 25 is not available in South Africa/South America, Charterers have option to stem RMF25 available.

**Clause 32.  Grace Period**
When hire is due and not received, the Owners before exercising the option of withdrawing the vessel from the Charter Party will give Charterers seventy-two (72) hours notice, Saturdays, Sundays and holidays excluded and will not withdraw the vessel if the hire is paid within these seventy-two (72) hours.
At any time after the expiry of the grace period provide as above and while the hire is still outstanding, the Owners shall, without prejudice to the liberty to withdraw, be entitled to withhold the performance of any and all of their obligations under the Charter Party and shall have no responsibility whatsoever for any consequences thereof, in respect of which the Charterers shall indemnify the Owners and hire shall continue to accrue and any extra expenses resulting shall be for the Charterers' account.

**Clause 33.**
A joint on-hire survey including bunkers and condition is to be held in Owners' time at delivery port and/or first loading port but vessel to be remain on hire case have cargo operation in the same time. A joint off-hire survey including bunkers and condition is to be held in Charterers' time at redelivery port. The cost of these surveys to be equally shared between Owners and Charterers. The appointment of the surveyors is to be agreed jointly between Owners and Charterers.

**Clause 34.**
The stevedores, although appointed and paid by the Charterers, Shippers or Receivers or their Agents, to be regarded as servants of the Owners and to remain under the direction and control of the Master who will be responsible for proper stowage and seaworthiness of his vessel. The Charterers to be responsible for damage caused by the negligence of stevedores in loading and discharging the vessel only which such damage is duly substantiated by the Master prompt notice of claim served in writing upon the party responsible within 24 hours of occurrence of damage or latest on completion of loading and/or discharging of the vessel at the port concerned.

However, in the case of hidden damage, the Master to advise Charterers or their Agents as soon as possible after discovery but not later than time of redelivery. Stevedores damage report to be issued prior to sailing and copy of all correspondence exchanged in this connection must be forwarded promptly to the Charterers. The Master shall co-operate with the Charterers or their Agents try best to obtain a written acknowledgment by the responsible parties causing damage unless the damage should have been made good in the meantime. The Charterers have the option of redelivering the vessel without repairing such stevedore damage that does not affect seaworthiness of the vessel or normal working and trading of the vessel.

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

The Owners agree that damage not affecting seaworthiness or efficiency and safe working of the ship may remain for occasional repair when the ship is to be docked for Owners' account so that the Charterers to pay the actual cost of repair for stevedore damage but not time used.

**Clause 35.**

Charterers to be responsible for any fines whatsoever imposed in the event of smuggling by Charterers employees, but Owners to be responsible for any such acts of their own Officers and/or crew. Charterers to remain responsible for detention of the vessel due to smuggling committed by Charterers employees only. Owners always to be responsible for Master's and/or crew's negligence in performing their duties.

**Clause 36.**

Should the vessel be put into any other port other than those instructed by the Charterers by reason of accident or breakdown or for the purpose of landing any injured or sick Officer, including the Master or members of the crew, the port charges, pilotages and other expenses including losses of time shall be borne by the Owners. Also should the vessel be put back whilst on voyage by any of the above mentioned reasons, the hire shall be suspended from the time of her putting back until she is against in the same or equivalent, position and the voyage resumed therefrom.

**Clause 37.**

Both parties to have the option of canceling this Charter Party with reasonable notice, if war breaks out between any two or more of the following countries U.S.A., Great Britain, Japan, U.S.S.R, The People's Republic of China, France, Republic of Korea, Greece, North Korea and Turkey.

**Clause 38.**

The Charterers to have the benefit of any return insurance premium receivable by Owners from their Underwriters, as and when received by Underwriters, by reason of vessel being in port or a minimum period of 30 days.

**Clause 39.**

If the vessel will be off-hire for longer than 30 days continuously, the Charterers have the option of cancelling this Charter, provided no cargo on board.

The Charterers have the option of adding the times lost by vessel being put off-hire to charter period.

**Clause 40.**

Owners engage themselves to maintain the vessel classed during the currency of this Charter.

**Clause 41.**

Owners guarantee that vessel is not black listed by any Arab league countries. Vessel is not black listed by U.S./Canadian longshoremen's union.

If immigration department or U.S.C.G. may request security guards/gangway watchman during ship stay in U.S.A. port, and such cost to be considered as port charges and to be for Charterers' account. Nationality of vessel's crew to be Hong Kong and People's Republic of China.

**Clause 42.**

At loading and discharging port(s) any time lost by vessel for reason of all crew not being on board when the vessel is ready to sail to be for Owners' account, as well as directly related expenses deriving therefrom.

**Clause 43.**

Charterers to pay US$1,300(one thousand three hundred dollars) per 30days for cable/entertainment/victualling charges.

**Clause 44.**

Vessel to be delivered with valid deratisation of deratisation exemption certificate on board, and if this does not cover the whole period of time charter, Owners undertake to carry out all necessary steps to renew such certificates and cost for same and detention to be for Owners' account, except as provided for in Clause 2.

**Clause 45.    Vessel Description**

**ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO**
**CHARTER PARTY DATED 19TH APRIL 2007**

- JIN XING
- ABOUT 55,400 MTS DWAT AT ABOUT 12.5 M SSW
- BUILT 2007    FLAG HONG KONG    CLASS ABS
- GRAIN/BALE   ABOUT 69,700 / 67,600 CBM
- LOA/BEAM   ABOUT 189.99 / 32.26 M
- GT/NT   ABOUT 31000 / 18700
- BULK CARRIER  5 HOLDS/HATCHES 4 X 30 TON CRANES + 4 X 13.5 CBM DUAL SCOOP GRABS
  (MAX PERMITTED DENSITY 1.09 T/M3)
- SPEED ABOUT 14.50 KNOTS BALLAST / 14.0 KNOTS LADEN UNDER GOOD WEATHER CONDITION
  ON ABOUT 31.7 MT BALLAST / 31.7 MT LADEN IFO (180 CST/RME180) PLUS ABOUT 1.9MT MDO
  AT SEA FOR THE ABOUT FIRST 20 DAYS THEN VESSEL WILL BURN ABOUT 1.9MT IFO AT SEA
  VESSEL HAS THE LIBERTY TO CONSUME MDO/DMB WHILE MANOEUVERING, IN/OUT OF
  PORTS,STARTING OF A/E, NAVIGATION IN SHALLOW/RESTRICTED/BUSY WATERS, CANALS, RIVERS.
  (ALL DETLS ABOUT WITHOUT GUARANTEE AND SUBJECT TO SHIP YARD FINAL FIGURES /
  CONFRIMATION )

OWNERS PLS KINDLY CLARIFY FLG REGARDING VSL' GRABS:

1. VESSEL'S GRAB IS ELECTRO-HYDRAULICALLY OPERATED.

2. GRABS 4 X 13.5 CBM (MAX PERMITTED DENSITY 1.10 T/M3)
PEINER MOTOR DUAL SCOOP GRABS

GRAB IS SUITABLE FOR THE HANDLING OF BULK MATERIALS WITH A PILED
DENSITY UP TO 2.50 T/M3

IN ORDER REACH ALWAYS THE MAX PERMITTED PAYLOAD AND TO AVOID OVERLOAD
OF THE EXISTING CRANE LIFTING CAPACITY THE GRAB SCOOPS WILL BE EQUIPPED
WITH KICK PLATES AND OFFERING THE FOLLOWING DIFFERENT CAPACITIES :

| CAPACITY (M3) (T/M3) | NUMBER OF KICK PLATES | MAX.PERMITTED DENSITY |
|---|---|---|
| 13.5 M3 | 4 | 1.10 T/M3 |
| 11.5 M3 | 3 | 1.30 T/M3 |
| 10.0 M3 | 2 | 1.50 T/M3 |
| 8.0  M3 | 1 | 1.85 T/M3 |
| 6.0  M3 | 0 | 2.50 T/M3 |

Vessel's trading certificates including SMC/ISPS/Class/P and I/etc likely available only after vessel's physical delivered from
the shipyard.

**Clause 46.**
With reference to Clause 4 of this Charter Party, hire is payable to Owners' bank account for hire payments as follows
Bank account :

Owner's Name:    Daeyang (HK) Shipping Co Ltd
Owner's Address:  Unit 1503, 15th Floor, Far East Finance Centre,
         16 Harcourt Road, Admiralty, Hong Kong
Owner's City:    Admiralty, Hong Kong
Owner's Country:  Hong Kong Special Administrative Region
         People's Republic of China

Owner's Bank Account Number and Name of Beneficiary:
IN FAVOUR OF:    DAEYANG (HK) SHIPPING CO LTD
A/C NUMBER:    002-4-657835

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

Bank's Name:     The Hongkong and Shanghai Banking Corporation Ltd
Bank's Address:   1 Queen's Road Central,
Bank's City:     Central
Bank's Country:   Hong Kong SAR China
Bank's Swift:    HSBCHKHHHKH
HSBC Bank USA NA, Swift address: MRMDUS33

**Clause 47.**
Should vessel be arrested during the currency of this Charter Party at the suite of any person having or purporting to have a claim or any interest in the vessel, hire under this Charter Party shall not be payable in respect of any period whilst the vessel remains under arrest or remains unemployed as the result of such arrest and the Owners shall reimburse the Charterers any expenditure which they incur under this Charter Party in respect of any period during which, by virtue of the operation of this Clause, no hire is payable.

**Clause 48.**
Vessel's hold condition on vessel's delivery to be clean swept and dried up so as to receive Charterers intended cargoes in all respects, free of salt, rust loose scales, and previous cargo residue to the satisfaction of on-hire surveyors. In case vessel's holds fail to pass, then vessel should be placed off-hire from time of such failure until vessel pass the same inspection satisfactory and any directly related expenses/time incurred thereby to be for Owners' account. In case vessel commenced loading on the passed holds then vessel to be off-hire on pro-rata basis.

Charterers have the liberty to redeliver the vessel with unclean holds paying the Owners a lumpsum of US$5,000(five thousand) in lieu of cleaning including removal/disposal of dunnage which to be for Owners' time and expense. However always understood that Charterers are to remove dunnage from holds and place same on deck at their time/risk/expense.

**Intermediate Hold Cleaning :**
Upon completion of discharge of each cargo (save the last cargo prior to redelivery), vessel's crew shall render customary assistance in cleaning a cargo compartments in preparation for the next cargo, if required by Charterers and if not prevented by any regulations or agreement whatsoever.

Such cleaning work shall be performed while vessel is en route to next loading port, provided that this can be safely done and that the duration of voyage is sufficient Charterers shall pay to Owners :

Intermediate hold cleaning : US$400.00 per hold if used
~~Intermediate hold cleaning for scrap : USD6,000.00 lumpsum~~ (cargo was excluded)
Intermediate hold cleaning for each
Bulk cement, petcoke, sulphur : US$6,000 lumpsum
Each time such cleaning is performed ;

Owners will endeavour to effect such cleaning as best as possible, but without any guarantee that cargo holds will be sufficiently cleaned and accepted on arrival at loading port and Owners shall not be responsible for and consequences arising from the fact that vessel's crew has been employed in cleaning.

Cleaning agents, if required, to be for Charterers account. It is understood that the crew will do their utmost to clean holds at quickly and efficiently.

**Clause 49.**
Charterers and/or their Agent have option to sign Bill(s) of Lading on behalf of Master in strict accordance with Mate receipts without prejudice to this Charter Party.

**Clause 50.**
1st hire and value of bunkers on delivery to be paid within 3 banking days after vessel's delivery. Charterers are entitled to deduct from last sufficient hire payments estimated Owners' disbursement but maximum US$400(four hundred)per port, as well as value of estimated quantity of bunkers on redelivery.

**Clause 51.**

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

The vessel is suitable for grab loading/discharge and no cargo to be loaded in places inaccessible to grab or in deep tanks. Charterers to have the privilege of using bulldozers in vessel's holds. However, unit weight of bulldozers will not exceed vessel's tank top strengths permitted and her operation always under master satisfaction.

**Clause 52.**
Normal quarantine time and expenses for vessel entering port(s) to be for Charterers account, but any time of detention and expenses for quarantine due to pestilence, illness etc., of Master/officer/crew to be for Owners' account.

**Clause 53.**
Deleted.

**Clause 54.**
Vessel's officers and crew are at least contracted to I.T.F. standards. Should the vessel be seized or detained by any authority during the currency of this Charter Party, the Charterers' liability for seizure or detention is ceased immediately from the time of her seizure or detention and all time lost by this reason shall be treated as off-hire until the time she resumes full service, unless such seizure or detention is occasioned by any personal act or omission or default of the Charterers or their Agents or by reason of cargo carried. Any direct related expenses incurred by and/or during the above seizure or detention is to be for Owners' account, unless such seizure or detention is occasioned by any person, act or omission or default of the Charterers or their Agents, or by reason of cargo carried.

If the vessel is off-hire for 30 (thirty) consecutive days by reason of above seizure or detention, unless such seizure or detention is occasioned by any person act or omission or default of the Charterers or their Agents or by reason of cargo carried, Charterers have the option of cancelling the balance of this Charter Party, always provided no cargo on board. In any case should vessel be detained, delayed or otherwise as described above, due to any fault of the Owners or their servants as outlined above, Owners will immediately take necessary action to overcome such delays.

**Clause 55.**
The vessel has a grain certificate on board enabling her to load up to and including a full cargo of grain in bulk without fittings but always accordance to SOLAS/IMO Recommendations/Regulations.

**Clause 56.**
The Owners warrant the vessel to be always safe in ballast.

**Clause 57.**
For the purpose of computing hire payments, the time for delivery and redelivery shall be adjusted to G.M.T.

**Clause 58.**
Owners guarantee Certificate of Financial Responsibility is fully valid under this Charter period.
Any time lost or expense incurred through failure to do so to be for Owners' account. The Master and the Owners shall be fully and financially responsible for all pollution caused by spillage or leakage unless pollution is caused by any act or negligence of Charterers or their servants.

The Owners warrant that the vessel is eligible for bunkers in the United States of America, its territories possessions.

**Clause 59.**
Master to have vessel ready for immediate cargo operations on arrival at each port in accordance with Charterers local Agent's instructions as far as this is possible.

Additionally, the Owners will provide at their own risk and expense for the officers and/or crew to carry out the following duties :

All opening and closing of hatches for loading and/or discharging, weather and local regulations permitting.
Maintaining power while loading and/or discharging.
Shifting ship during loading and/or discharging.
Docking and undocking .
Bunkering.

5

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

Officers and crew to shape up hatches as much as possible, weather permitting prior to arrival at loading and/or discharging operation.

All above are always subject to local shore labour regulations.

The Master shall be responsible for all gear, equipment, and/or stores supplied by or for Charterers' account and the Master shall keep a record of all such gear, equipment and/or stores so supplied. Master to maintain same as Owners' property but without guarantee.

Such gear, equipment and/or stores to be redelivered to Charterers prior to the redelivery of the vessel to the Owners, fair wear and tear excepted.

**Clause 60.   Cargo Exclusions**
CHRTRS HV OPTION MAX   5 ( FIVE) PER YEAR   OUT OF BULK SULPHUR, BULK CEMENT ( TWO CARGO PER YEAR ) , BULK CEMENT CLINKER, BULK PETCOKE,   WCH SAME NOT TO BE ON CONSECUTIVE VOYAGES N NOT TO BE THE LAST CGO PRIOR REDELY.

CARGO EXCLUSIONS
----------------
ALL DANGEROUS, INFLAMMABLE, INJURIOUS, HAZARDOUS N CORROSIVE CARGOES, EXPLOSIVES OF ANY KIND INCLUDING BLASTING CAPS AND DETONATORS, BLACK POWDER, ARMS, AMMUNITION N WAR MATERIAL OF ANY KIND, NUCLEAR FUEL OR SUBSTANCES OR RADIOACTIVE MATERIAL OF ANY KIND N/OR THEIR WASTES, ACID. PETROLEUM OR ITS PRODUCTS, NAPTHA, TURPENTINE, MOTOR SPIRITS, CARBON BLACK. ASPHALT, PITCH, TAR, SULPHUR, AMMONIUM SULPHATE, AMMONIUM NITRATE, HARMFUL N CORROSIVE FERTS. CALCIUM CARBIDE, BARYTES,

CALCIUM HYPOCHLORITE, BORAX, CHARCOAL, CREOSOTED GOODS, LOGS OF ANY KIND COPRA AND/OR ITS PRODUCTS, SALTS, WET HIDES, PETROLEUM COKE, INDIAN COALS, LOADED BOMBS, DYNAMITE, TNT, NO IMO DANGEROUS CARGOES, LIVESTOCK, HIDES, ASBESTOS, CAUSTIC SODA, DIRECT REDUCED IRON/ORE BRIQUETTES LUMPS/PELLETS, SLUDGE ORE, FERRO SILICON, PYRITES, SPONGE IRON/ PIG IRON /PRE REDUCED IRON, H.B.I., FERRO MANGANCSE, SILICON MANGANCSE, QICK LIME, SUNFLOWER SEED EXPELLERS, SCRAP INCLUDING MOTOR BLOCKS N TURNINGS, METAL BORING N CUTTINGS, FISHMEAL, BONES N MEATBONE MEAL, RESIN, SALTCAKE, SHAVINGS, TOBACCO, PITCH IN BULK OR DRUMS, CHARCOAL IN GUNNY BAGS, QUEBRACHO EXTRACTS, BULK WHEAT FLOUR, BULK RICE. BULK MILLED RICE, RAILWAY WAGONS, CEMENT,

DECK CARGO, OVERWEIGHT CARGO (WHICH EXCEEDS VESSEL'S TANK TOP STRENGTH LIMITATION) N THE CARGO OF WHICH THE NATURE COULD AFFECT THE SAFETY OF VESSEL, CREW N CARGO LOADED ON BOARD.

CHARTERERS CAN LOAD CONCENTRATES EXCEPT LEAD CONCENTRATES HOWEVER ALL CONCENTRATES TO BE LOADED/STOWED/TRIMMED AND DISCHARGED IN ACCORDANCE TO LATEST IMO RULES N REGULATIONS.

CHARTERERS CAN LOAD ORE PELLETS, BUT FIRST LAYER TO BE LOADED AT HEIGHT AND TO BE EVENLY STOWED/TRIMMED TO MASTERS SATISFACTION BEFORE LOADING BALANCE CARGO.

BULK SULPHUR   OWRS PROTECTIVE CL.
-------------------------------------------------------------
NOTWITHSTANDINGTHE   CARGO   EXCLUSIONS   AS   ABOVE,   CHARTERERS   HAVE   LIBERTY   TO CARRY   CARGO OF SULPHUR, (WHETHER IT BE FULL OR PART CARGO),DURING THE ENTIRE CURRENCY OF THIS CHARTER, ON FOLLOWING CONDITIONS :

(A) CHARTERERS UNDERTAKE TO USE HOLDS AS LESS AS POSSIBLE, PROVIDED VESSEL'S STABILITY TRIM AND STRESS PERMITTING:

(B) BEFORE LOADING ALL HOLDS ASSIGNED FOR SULPHUR TOBE LIME-WASHED BY CHARTERERS AT

6

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

THEIR TIME/EXPENSE/RISK TO SATISFACTION OF MASTER AND INDEPENDENT SURVEYORS APPOINTED BY CHARTERERS AT THEIR EXPENSE:

(C) CARGO TOBE LOADED/STOWED/TRIMMED/DISCHARGED STRICTLY ACCORDING TO LATEST IMO AND/OR ANY OTHER LATEST REGULATIONS/RULES APPLICABLE TO SUCH CARGO:

(D) AFTER DISCHARGE CHARTERERS TO SUPPLY SUFFICIENT FRESH WATER AT THEIR EXPENSE FOR WASHING DOWN OF ALL HOLDS: AND LIME RESIDUES IN CARGO HOLD(S) TOBE REMOVED AT CHARTERERS' TIME AND EXPENSES.

(E) SUCH CARGO NOT TO BE THE LAST CGO PRIOR TO REDELIVERY:

(F) ANY EXTRA EXPENSES RESULTING THEREFROM/INCURRED THEREBY AND ANY DETENTION THROUGH ANY OF ABOVE CAUSES TOBE FOR CHARTERERS'S ACCOUNT.

THE LIBERTY GRANTED TO CHARTERERS HEREIN IS SUBJECT TO CHARTERERS' GUARANTEE THAT THE ABOVE-MENTIONED COMMODITIES WILL BE NOT CARRIED IN CONSECUTIVE SHIPMENTS/VOYAGE. OWNERS HAVE RIGHT TO WITHDRAW THE LIBERTY GRANTED TO CHARTERERS HEREIN IN CASE OF ANY BREACH OF ABOVE BY CHARTERERS.

BULK PETCOKE OWRS PROTECTIVE CL.
------------------------------------------------------------------

NOTWITHSTANDING THE CARGO EXCLUSIONS AS ABOVE, CHARTERERS HAVE LIBERTY TO CARRY CARGO OF PETROLEUM COKE, (WHETHER IT BE FULL OR PART CARGO), DURING THE ENTIRE CURRENCY OF THIS CHARTER ON FOLLOWING CONDITIONS :

(A) DELETED

(B) THE PETROLEUM COKE MENTIONED HEREIN IS ONLY LIMITED TO PETROLEUM COKE OF NON-OILY/NON-HAZARDOUS/NON-DANGEROUS CALCINED TYPE,

(C) IF CHARTERERS EXERCISE SUCH OPTION, CHARTERERS UNDERTAKE TO USE HOLDS AS LESS AS POSSIBLE, PROVIDED VESSEL'S STABILITY TRIM AND STRESS PERMITTING,

(D) SUCH CARGO TOBE LOADED/STOWED/TRIMMED/DISCHARGED STRICTLY ACCORDING TO LATEST IMO AND/OR ANY OTHER LATEST REGULATIONS/RULES APPLICABLE TO SUCH CARGO:

(E) SHOULD ANY ADDITIONAL/SPECIAL WASHDOWN OF HOLDS BEFORE LOADING BE RECOMMENDED/PROPOSED/REQUIRED BY MASTER, CHARTERERS UNDERTAKE TO ARRANGE THE SAME AT THEIR EXPENSE/TIME,

(F) AFTER DISCHARGE CHARTERERS TO ARRANGE AT THEIR EXPENSE/TIME ANY ADDITIONAL/SPECIAL WASHDOWN OF HOLDS CARRYING SUCH CARGO BY CHEMICAL AS MASTER CONSIDERS IT NECESSARY,

(G) SUCH CARGO NOT TO BE THE LAST CARGO PRIOR TO REDELIVERY,

(H) ANY EXTRA EXPENSES RESULTING THEREFROM/INCURRED THEREBY AND ANY DETENTION THROUGH ANY OF ABOVE CAUSES TOBE FOR CHARTERERS' ACCOUNT.

-CEMENT IN BULK PROTECTIVE CLAUSE
------------------------------------------------------------------

NOTWITHSTANDING THE CARGO EXCLUSIONS AS ABOVE, CHARTERERS HAVE LIBERTY TO CARRY CARGOES OF BULK CEMENT, (WHETHER IT BE FULL OR PART CARGO), DURING THE ENTIRE CURRENCY OF THIS CHARTER ON FOLLOWING CONDITIONS :

(A) CHARTERERS UNDERTAKE TO USE HOLDS AS LESS AS POSSIBLE, PROVIDED VESSEL'S STABILITY TRIM

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

AND STRESS PERMITTING

(B) SHOULD ANY ADDITIONAL/SPECIAL WASHDOWN OF HOLDS BEFORE LOADING BE REQUIRED/RECOMMENDED BY INDEPENDENT SURVEYOR APPOINTED BY CHARTERERS AT THEIR EXPENSE, SUCH WASHDOWN TO BE ARRANGED BY CHARTERERS AT THEIR EXPENSE.

(C) CHARTERERS ARE NOT ALLOWED TO DRILL HOLES AND/OR MAKE ANY OPENINGS ON ANY HATCH COVERS FOR PURPOSES OF LOADING/STOWING/TRIMMING/DISCHARGING.

(D) AFTER LOADING CHARTERERS UNDERTAKE TO ARRANGE AT THEIR EXPENSES ANY SPECIAL/EXTRA TRIMMING AND/OR LEVELLING OF CARGO TO MASTER'S SATISFACTION AND ALSO CHARTERERS TO GIVE REASONABLE TIME TO ALLOW FOR THE CARGO TO SETTLE AND ANY AIR TO ESCAPE BEFORE VESSEL'S DEPARTURE FROM LOADING BERTH/PORT.

(E) SUCH CARGO NOT TO BE THE LAST CARGO PRIOR TO REDELIVERY

(F) CHARTERERS WILL SUPPLY ENOUGH RAMNECK MARINE TAPE TO SEAL ALL CARGO HATCHES AFTER LOADED CEMENT CARGO AND UNDER CHARTERERS ACCOUNT.

(G) AFTER CEMENT CARGO, CHARTERERS WILL SUPPLY CLEANING MATERIALS, FRESH WATER AND SUBMERSIBLE PUMP FOR CARGO HOLDS CLEANING UNDER CHARTERERS ACCOUNT. SHIP'S PIPES LINE WILL NOT BE ALLOWED FOR PUMPING OUT BILGES WATER WITH RESIDUE OF CEMENT CARGO.

(H) ANY EXTRA EXPENSES RESULTING THEREFROM/INCURRED THEREBY AND ANY DETENTION THROUGH ANY OF ABOVE CAUSES TO BE FOR CHARTERERS' ACCOUNT.

(I) THE LIBERTY GRANTED TO CHARTERERS HEREIN IS SUBJECT TO CHARTERERS'

GUARANTEE THAT THE ABOVE-MENTIONED COMMODITIES WILL BE NOT CARRIED IN CONSECUTIVE SHIPMENTS/VOYAGES. OWNERS HAVE RIGHT TO WITHDRAW THE LIBERTY GRANTED TO CHARTERERS HEREIN IN CASE OF ANY BREACH OF ABOVE BY CHARTERERS.

OWNS WILL RVT NUMBER OF HOLES ON EACH HATCH, LOCATION AND DIMENSION TOMM

**Clause 61.**
The service of Ocean Routes or equivalent, which company to be prior Owners' approval which not to be unreasonably withheld may be engaged at Charterers' expense to recommend optimum route and advise Master about weather en-route. Master shall be free to follow Ocean Routes or equivalent, which company to be prior Owners' approval, recommendation and directions to route course and/or weather or not in accordance with the safety of the vessel and crew which are left entirely to his discretion. Charterers shall not be responsible in any way for Ocean Route information, directions and recommendations which are provided as an assistance only and entirely without prejudice. The Master shall prepare a deck log abstract for each sea passage showing daily noon position and all other relevant information.
The Charterers may supply an independent weather bureau's advice to the Master during voyages specified by the Charterers the master shall comply with the reporting procedure of the routing service selected by the Charterers evidence of weather conditions shall be taken from the vessel's deck logs and the independent weather bureau's reports in the event of a consistent discrepancy between the deck logs and the independent weather bureau's reports, the independent weather bureaus reports shall be taken as ruling. For the purpose of this Charter Party good weather conditions shall be defined as
weather conditions not exceeding in winds Beaufort Force 4 and Douglas Sea State 3, about on speed means 0.5 knot allowance. Independent weather bureaus to be Weather news Ocean routes AWT only.

**Clause 62.**
Owners have option to sell the vessel during the charter period under Charterers' prior consent which not to be unreasonably withheld.

**Clause 63.**
Watchmen, if any, to be for the account of the party ordering same, if compulsory always to be for Charterers' account.

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

**Clause 64.**
  All loading and discharging operations to be free of expense to Owners.

**Clause 65.**
  Owners P. and I. Club : Britannia steamship insurance association limited.

**Clause 66.**
  Liabilities for cargo claims shall be borne by Owners/Time Charterers in accordance with the latest Interclub New York Produce Exchange Agreement. The party having paid claims shall submit to the other party supporting documents as soon as possible.
  Neither party shall between themselves refer to the one year time limit as a defence.

**Clause 67.   Trading Exclusions**
CUBA, LEBANON, SYRIA, ALBANIA, TURKISH OCCUPIED CYPRUS, MADAGASCAR, LIBYA (NCLUDING GULF OF SIDRA/SIRTE), NICARGUA, GREAT LAKES, ISRAEL OR ISRACLI CONTROLLED COUNTRIES/AREAS, LIBERIA,ZAIRE, IRAQ NORTH KOREA, ANGOLA (INCLUDING CABINDA), FORMER STATES OF YUGOSLAVIA, COAST PORTS OF SCA OF AZOV ALLOWED ONLY AFTER APRIL 1ST UPTO AND INCLUDING 15TH NOVEMBER BUT ALWAYS SUBJECT TO THE ICE CLAUSE OF THIS CHARTER PARTY.

JORDAN BUT AQABA ALLOWED AND THE CHARTERERS GUARANTEE VESSEL WILL NOT BE BLACKLISTED BY ANY OTHER COUNTRIES AFTER CALLING AQABA, ALSO ANY AND ALL CONSEQUENCES FOR VESSEL CALLING AQABA TO BE FOR CHARTERERS SOLE ACCOUNT AND RESPONSIBILITY.

PACIFIC RUSSIAN/C.I.S./SIBERIAN PORTS INCLUDING SAKHALIN ISLAND, NAMIBIA, ETHIOPIA, SOMALIA, PEOPLES REPUBLIC OF YEMEN (NORTH AND SOUTH), SRILANKA, CAMBODIA, GEORGIA (INCLUDING ABKHAZIA), HAITI, CYPRUS, NIGERIA, FINDLAND, BELIZE, HONDURAS.

THE VESSEL MAY CALL AT KUWAIT BUT ANY AND ALL CONSEQUENCES FOR VESSEL CALLING KUWAIT TO BE AT CHARTERERS SOLE ACCOUNT AND RESPONSIBILITY.

NO DIRECT CALLING BETWEEN TAIWAN AND PRC.

WAR AND WAR LIKE ZONES AND OTHER COUNTRIES HAVING HOSTILITIES WITH VESSEL'S FLAG, PLACES WHICH MAYBE EXCLUDED BY AUTHORITY OF VESSEL'S FLAG. ANY ICE-BOUND PORT(S) WHERE VESSEL WILL NOT BE ABLE TO REACH OR LEAVE AFTER AND/OR BEFORE LOADING AND/OR DISCHARGING, VESSEL NOT TO FORCE ICE AND NOT TO FOLLOW ICE BREAKER UNDER ANY CIRCUMSTANCES.

ANY BASIC WAR RISK PREMIUM TO BE FOR OWNERS ACCOUNT, ANY ADDITIONAL WAR RISK INSURANCE PREMIUM AND/OR ANY INCREASE IN WAR RISK INSURANCE PREMIUM INCLUDING BLOCKING AND TRAPPING AND CREW WAR BONUS FOR TRADING TO AREAS WHERE SUCH ADDITIONAL AND/OR INCREASED PREMIUM/CREW WAR BONUS ARE PAYABLE AS DESIGNATED BY OWNERS WAR RISK UNDERWRITERS/OWNERS' TRAIFF ON CREW WAR BONUS TO BEFOR CHARTERERS ACCOUNT.

CHTRS SHALL NOT BE PERMITTED TO EMPLOY THE VESSEL CONSECUTIVELY FOR MORE THAN THIRTY ( 30 ) DAYS IN ANY TRADE(S) WHERE STEAMING AT FULL CHARTERPARTY SPEED BETWEEN PORT IS LESS THAT SEVEN ( 7 ) DAYS .

**Clause 68.**
  New Jason Clause, Both to Blame Clause, BIMCO Voyage 1993, P and I Bunkers Clause as per Clause 29, General Clause Paramount are to be incorporated in all Bill(s) of Lading. Standard BIMCO ISPS Clause and Standard BIMCO ISM Clause to apply.

**Clause 69.**
  Any dues/taxes on cargo and/or freight or earned under this Charter Party or its sub- hires and/or sub-freight to be for the Charterers' account.

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

In case of loss of time due to boycott, picket at any port or place by the shore and/or port labour and/or the tugboat(s) and/or pilots and/or governmental authority directly attributable to Ownership, and/or the terms and conditions on which members of the officers/crew were employed. Vessel then to be off-hired for any time lost thereby and the cost bunkers consumed during the period to be for Owners' account.

**Clause 70.**
**Deleted.**

**Clause 71.**
Owners to provide by fax invoice on their headed paper to the Charterers covering each Charterers' remittance but such fax invoices not to be considered a condition required for hire or other payments and on no occasion are such payments to be delayed by Charterers on this account when they are due.

**Clause 72.**
The Charterers warrant that each transport document accompanying a shipment of cargo destined to a port of place in the U.S.A. shall have been endorsed with unique Bills of Lading identifier as required by the U.S. Customs Regulation (19 GRE Part 4 Section 47. A.) including subsequent changes, amendments or modifications thereto, not later than the first port of call.

Non-compliance with the provisions of the Clause shall amount to breach of warranty for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them.

Furthermore, all time lost and all expenses incurred including fines as a result of the Charterers breach of the provisions of this Clause shall be for the Charterers account.

**Clause 73.**
Charterers Bill(s) of Lading (on Congen Bill(s) form or equivalent) to be used and Master to release to Charterers or their agents his authority to sign Bill(s) of Lading on his behalf provided in strict accordance with Mate's Receipts and Charterers holding Owners harmless against all consequences arising out of their signing Bill(s) of Lading.

**Clause 74.**
All Bill(s) of Lading to contain the Hague or Hague Visby Rules.

**Clause 75.**
Any cargo separations other than by vessel's natural separations to be for Charterers' time, risk and expense.

**Clause 76.  BIMCO Double Banking Clause**
   (a) The Charterers shall have the right, where and when it is customary and safe for vessel or similar size and type to do so, to order the vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transshipment, loading or discharging of cargo and/or bunkering.

   (b) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this Clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

   (c) Without prejudice to the generality of the Charterers' rights under (a) and (b), it is expressly agreed that the Master shall have the right to refuse to allow the vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.

   (d) The Owners shall be entitled to insure any deductible under the vessel hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the vessel's Underwriters and/or the cost of insuring any deductible under the vessel's hull policy.

   (e) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation.

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

The vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

**Clause 77.**
Owners to allow Charterers to discharge cargos without presentation of original Bill(s) of Lading by providing with Letter of Indemnity in accordance with Owners' P and I Club form and wording before discharging. Letter of Indemnity to be stamped/signed by Charterers only.

**Clause 78.**
Both-to Blame Collision Clause, New Jason Clause, BIMCO CONWARTIME 2004 Clause, P. and I. Bunkering Clause, General Clause Paramount, U.K. Clause Paramount, U.S.A. Clause Paramount, Canadian Clause Paramount, ISPS Clause and ISM Clause as applicable are to be considered part of this Charter Party.

**Clause 79.**
All negotiations and eventual fixture to be kept private and confidential.

**Clause 80.**
Charterers' Agents at both loading and discharging port not to attend major Owners' matters.

**Clause 81.**
Owners guarantee vessel is free from Asian Gypsy Moth.

**Clause 82.**
Overage insurance on cargo due to vessel's age to be for Charterers' account.

**Clause 83.**
Owners guarantee that vessel's hatch covers are to be watertight all throughout this Charter period and if any hatch covers found defective, same to be rectified at Owners time and expense to independent survey satisfaction, Charterers also have the right to carry hose test on all hatches at anytime during this Charter.

**Clause 84.**
Owners guarantee vessel is single deck self-trimming bulk carrier and bridge and engine room after and no obstructer in cargo compartment. Owners guarantee vessel is fully grain fitted/ self-trimming but always accordance to Solas/IMO Recommendation/Regulations.

**Clause 85.**
Owners confirm vessel's gears are in good working condition. Actual time lost on account of breakdown of the vessel's gear or other gear essential to the loading/discharging to be deducted from hire in relation to number of workable holds. If due to vessel's gear breakdown, Charterers to engage shore crane with actual cost to be for Owners' account and vessel to be remained on hire, but always subject to Owners/Master's approval which not to be unreasonably withheld – and if any stevedores/terminals standby times are charged or incurred thereby, such actual expenses shall be for Owners' account.

**Clause 86.**
Vessel is fully fitted with ITF/WWF/AHL on delivery and under this Charter.

**Clause 87.**
Owners guarantee vessel not to be rejected at any port of call permitted under this Charter Party during charter period by reason of trading with Cuba before and any time/expense incurred thereby to be for Owners account.

**Clause 88.    BIMCO Standard ISM Clause**
From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and "the Company" (as defined by the ISM Code) shall comply with the requirements of this ISM Code.   Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers. Except as otherwise provided in this Charter, loss, damage, expense, or delay caused by failure on the part of the Owners or 'the Company" to comply with the ISM Code shall be for Owners' account.

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

**Clause 89.**
Charterers have the option to use grabs on board free of charge.

**Clause 90.**
STANDARD BIMCO WAR RISK Clause "CONWARTIME 2004" to be applied.

**Clause 91.  GA + Arbitration in London. English law to apply.**
For disputes where the total amount claimed by either party does not exceed the amount US$50,000(fifty thousand) the arbitration shall be conducted in accordance with the small claims procedure 2002 of the London Maritime Arbitrators Association.

All cargo claims to be settled in accordance with the NYPE Interclub Agreement incorporation latest amendments.

**Clause 92.  Drydocking Clause**
The Owners shall have the option to place the vessel in drydock during the currency of this Charter at a convenient time and place to be mutually agreed between the Owners and the Charterers for bottom cleaning and painting and/or repair as required by class or directed by circumstances.
Owners are to notify Charterers of the intention of such drydocking and/or periodical survey 3 months in advance, except for emergency case, and Charterers will bring the vessel to Singapore/Japan range including People's Republic of China/Taiwan/ Vietnam/Philippines/Thailand/Malaysia for drydocking.

**Clause 93.**
Owners will give Charterers not less than 25/20days approximate notice of vessel's expected date of delivery and 15/10/7/5/3/2/1 days notice of delivery.

**Clause 94.**
Throughout the period of the Charter, vessel to be in possession of all necessary valid equipment and certificates to comply with safety and health regulations, national and international regulations, and all current requirements at all ports of call, Panama and Suez canal included.

**Clause 95.**
Owners guarantee that the vessel will comply with regulations and requirements at all ports of call and have certificates on board applicable to those ports/countries where the vessel will trade under this Charter.

**Clause 96.  Charterers Bill(s) of Lading forms to be used, if required.**
No Liner/Way/Through Bills of Lading to be issued under this charter.
Neither the Charterers nor their Agents shall permit the issue of any Bill of Lading, Waybill or other document evidencing a contract of carriage (whether or not signed on behalf of the Owners or on behalf of the Charterers or on behalf of the Sub-Charterers) incorporating, where not compulsorily applicable, The Hamburg Rules or any legislation giving effect to the Hamburg Rules or any other legislation imposing liabilities in excess of Hague or Hague-Visby Rules. Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this Clause.

Charterers and/or their agents have the right to issue and sign seaway bills (genwaybill form) in lieu of bills of lading for cargo discharge in Japanese ports only. At the discharging ports, cargo to be released without presentation of non negotiable seaway bill and L.O.I., in which case Charterers shall indemnify and keep Owners and the vessel harmless from all consequences arising from doing so.

**Clause 97.**
It is understood that if necessary, vessel will comply with any safety/health regulations and/or requirements in effect at ports of loading and/or discharging, a particular reference is the United States Department of Labour Safety and Health Regulations set forth in part III of the federal register. Although other provisions of this Charter make it the responsibility of the Owners it is agreed that should the vessel not meet safety/health rules and regulations, Owners will take immediate corrective measures and any stevedore standby time including off hire, will be for the Owners' account.

**Clause 98.**

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO CHARTER PARTY DATED 19TH APRIL 2007

Vessel's cargo gear and all other equipments are NK classed also vessel's gear shall comply with the regulations of the country in which vessel will be employed and Owners to ensure that vessel is at all times in possession of valid and up-to-date certificates of efficiency to comply with such if required.

**Clause 99.   Oil Pollution Clause**

    (a)  If the Owners are required to establish or maintain financial security or responsibility in respect of oil or other pollution damage to enable vessel lawfully to enter, remain in or leave any port, place, territorial or contiguous waters, of any country or state in performance of this Charter Party, the Owners shall make all arrangements by bond or otherwise as may be necessary to satisfy such requirements at the Owners' sole expense, unless this pollution rose by reason of Charterers' negligence.

    (b)  The Charterers shall be under no responsibility for all consequences (including loss of time) of oil or other pollution damage and failure or inability of the Owners to do so as provided for above and any loss of time incurred thereby to be off-hire, unless this pollution rose by reason of Charterers negligence.

**Clause 100.**
Deleted.

**Clause 101.**
Deleted.

**Clause 102.**
No Objection Certificate for Indian trading to be given to Charterers, if required.

**Clause 103.   Off-hire Add-Up**
The Charterers may in their option, at any time, add to the time charter period, partly or wholly, any off-hire period(s).

**Clause 104.**
Throughout the period of this Charter vessel will have on board current valid and up-to-date Panama and Suez Canal Measurement certificates and will so comply with all applicable requirements, regulations and recommendations of the Canal Authority so as to avoid any delay in transit of the Panama or Suez Canal.

Any delay caused by non-compliance with the aforesaid or lack of proper documentation and/or certificates and/or equipment and fittings required to transit the Panama Canal will be considered off-hire and any expenses resulting from such delay including bunkers consumed during the period will be for Owners' account.

**Clause 105.   Bottom Fouling Clause**
The case of the vessel's bottom fouling due to Charterers ordering the vessel to stay in port for a period exceeding 30 days, Owners will carry out bottom cleaning at said port or next available port where there are such facilities, expenses and time to be equally shared. Charterers will not claim on vessel's performance until such cleaning has been carried out.

**Clause 106.   Break IWL Clause**
Charterers shall have the privilege of breaking institute warranty limits by giving due advance notice to Owners and seek Owners' prior consent and Charterers paying any extra insurance premium thereby incurred, but in no case shall exceed the London scale. This extra insurance to be covered by Owners with their hull underwriters and to be reimbursed by the Charterers against presentation of such invoice.

**Clause 107.   Supercargoes/Port Captains**
Whenever required, the Master must bring the vessel into even trim to ensure correct bunker soundings. The Charterers and/or their supercargo(es) and/or surveyors to have free and unlimited access to the vessel's tank plans, calibration scales and/or other plans as requested. Charterers can get directly from Owners copies of deck and engine log book.

**Clause 108.**
Deleted.

**Clause 109.   NAABSA Clause**

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

Charterers have the option to trade vessel in Argentina / brazil grain port only but max for 2 times per year, where vessel of similar size customarily lie safely aground. Owners have option to arrange inspection of vessel's bottom and underwater parts by diver and class surveyor before sailing from the NAABSA port. If any damage is found to vessel's bottom or underwater part, any extra time incurred and expenses for such inspection shall be for Charterers' account. If no damage is found to vessel's bottom or underwater part, any extra time incurred and expenses for such inspection shall be shared equally between Owners and Charterers.

**Clause 110.**
Standard BIMCO fuel Sulphur content clause to be applied under this charter.

**Clause 111.**
AMS Clause to be applied under this Charter.

**Clause 112.**
Charterers have the option to discharge any cargo loaded at any port other than final destination. Charterers indemnify Owners from any responsibility, risk, expenses which may arise from Owners discharging cargo as per Charterers instructions against Charterers signing Owners form/Letter of indemnity.

**Clause 113.**
Owners guarantee that valid ITF or equivalent agreement for the vessel covering any port or place is available on board for the whole period of this charter.

**Clause 114.**
(1.) If steel coils to be loaded, Owners will allow Charterers to load same within vessel tank top strength permitted.
(2.) Owners warrant that vessels holds are clear of any fittings/superstructures, such as car deck/curtain plates.

- END –

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

### War Risks Clause for Time Charters, 2004 (Code Name: CONWARTIME 2004)

(A) For the purpose of this Clause, the words:
   (i.) "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and
   (ii.) "War Risks" shall include any actual, threatened or reported:
      war; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(B) The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(C) The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent's right of search and/or confiscation.

(D)
   (i.) The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their protection and Indemnity Risks), and the premiums and/or calls therefor shall be for their account.
   (ii.) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(E) If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then the actual bonus or additional wages paid shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(F) The Vessel shall have liberty:-
   (i.) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;
   (ii.) to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;
   (iii.) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;
   (iv.) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;
   (v.) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is

15

# ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
# CHARTER PARTY DATED 19TH APRIL 2007

reason to believe  that they may be subject to internment, imprisonment or other  sanctions.

(G) If in accordance with their rights under the foregoing provisions of this  Clause, the Owners shall refuse to proceed to the loading or discharging  ports, or any one or more of them, they shall immediately inform the  Charterers. No cargo shall be discharged at any alternative port without  first giving the Charterers notice of the Owners' intention to do so and  requesting them to nominate a safe port for such discharge. Failing such  nomination by the Charterers within 48 hours  of the receipt of such notice  and request, the Owners may discharge the cargo at any safe port of their  own choice.

(H) If in compliance with any of the provisions of sub-clauses (b) to (g) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

## GENERAL AVERAGE AND THE NEW JASON CLAUSE

General Average shall be adjusted according to York/Antwerp Rules, 1974, but where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply:-

## NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the goods, Shippers, Consignees or Owners of the goods shall contribute with the Carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

"If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers.  Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, Shippers, Consignees or Owners of the goods to the Carrier before delivery."

and the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

## CANADIAN CLAUSE PARAMOUNT

This Bill of lading, as far as it relates to the Carriage of goods by water, shall have effect, subject to the provisions of the Water Carriage of Goods Act, 1936, enacted by the Parliament of the Dominion of Canada, which shall be deemed to be incorporated herein, and nothing contained shall be deemed a surrender by the Carrier of any of its rights or immunities or any increase of any of its responsibilities or liabilities under the said Act. If any terms of the Bill of Lading be repugnant to said Act to any extent, such terms shall be void to the extent but no further.

## U.S.A. CLAUSE PARAMOUNT

This bill of lading shall have effect subject to the provisions of the carriage of goods by sea act of the United States, approved April 16th, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under the said act.  If any term of this bill of lading be repugnant to said act to any extent, such terms shall be void to that extent, but no further.

## BIMCO ISPS CLAUSE FOR TIME CHARTER PARTIES

(a)

(i) From the date of coming in to force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by

16

## ADDITIONAL CLAUSES TO MV "JIN XING"/FARENCO
## CHARTER PARTY DATED 19TH APRIL 2007

the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.

(b)

(i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the Charter Party, shall ensure that the contact details of all sub-Charterers are likewise provided to the Owners".

(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d) If either party make any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

Y. M. Lin

发件人:    bill [hdy@oceanrobin.cn]
发送时间: 2008年1月30日星期三 18:28
收件人:    aquavita; farenco
抄送:      hdy@oceanrobin.cn
主题:      RE: MV JIN XING / AQUAVITA   CLEAN RECAP


****************************************
Ocean Robin Shipping Holding Corp
Tel:   86-10-58790606
Fax:   86-10-58790625
Email: pmax@oceanrobin.cn
       hdy@oceanrobin.cn
       ops@oceanrobin.cn
****************************************


TO: FARENCO / MR HUANG
TO: AQUAVITA / KONSTANTIN
FM: OCEAN ROBIN / BILL

GDY

RE: MV JIN XING /AQUAVITA - CLEAN RECAP

PLSD TO RECAP FOLL CLEAN FIXTURE WITH CP DD 30TH JAN 2008 ASF:-

1.M/V "JIN XING"
 -FULL T/C DESCR as per Owner's BTB C/P
 -ETA 5 FEB, 2/3 DAYS DISCH, ETCD 7/8 FEB, CGO ON BOARD IRON ORE

2 A/C AQUAVITA INTERNATIONAL S.A., Majuro, Marshall Islands, MH 96960

3.FOR 1 TCT VIA SPS SBS SAS VIA INDONESIA (intention load - tanjung buli, wog)
 TO BLACK SEA (intention dischrge - ilyichesk, wog) WITH HARMLESS/LAWFUL BULK NICKEL ORE ONLY
 DURATION ABT 40/45 DAYS WOG

4.DELY DLOSP 1SP N.CHINA PIOO INTENTION RIZHAO ATDNSHINC

5.LAY/CAN 8 (0001LT) / 12 (2359LT) FEBRUARY 2008

6. REDELY DLOSP 1 SP BLACK SEA PICO (intention ukraine black sea port) ATDNSHINC

7.HIRE USD 28750 PDPR INCLOT
8. Bunker clause: Delete Charterers last and replaced as below
   Bunker on dely about 650MT IFO and 80MT MDO
   Bunker on redely about same as on dely
   Bunker price: USD 500 and USD 810 for IFO and MDO respectively

- Bunker specification as per Owner's BTB C/P

9.ILOHC USD 6'000 LUMPSUM

10.C/E/V 1'500 PMPR

11.2.5PCT ADDCOM + 1.25PCT OCEAN ROBIN SHIPPING HOLDING CORP.

12.OWISE ASP M/V "JIN XING" /FARENCO DATED 19TH APRIL 2007 WHICH TO BE LOGICALLY
   AMENDED IN ACCORDANCE WITH MAINTERMS AGREED AND ALTERED AS FOLL:

2008-5-19

MAIN BODY

line 54:
AFTER "Charterers are to give Owners" DELETE AND INSERT: "notice of 20/15/10/7/5 days approximate
redelivery date and intended port thence 3/2/1 days definite notice of redelivery date and port"
RIDER PART

Clause 48:
DELETE FROM "Intermediate Hold Cleaning:" TILL THE END OF THE CLAUSE

Clause 92. Drydocking Clause
DELETE AND INSERT: "No drydocking during this c/p except in case of an emergency"
ADD BELOW PROTECTIVE CLAUSE FOR NICKEL ORE TRANSPORTATION

aa)Cargo of nickel ore in bulk is always to be loaded/stowed/trimmed/carried discharged in strict accordance
with the latest IMO Bulk Code of safe practice for solid bulk cargoes recommendations/regulations and local
government rules/regulations.

bb)Before any of loading is allowed, Charterers/shippers must provide valid certificates for moisture content
and transportable moisture limit(TML) and MSDS-material safety data sheet. The moisture content of the
cargo in any one hold can not exceed TML. No special fitting is required for carrying this cargo.

END CLEAN RECAP

TKS AGAIN YR KIND SUPPORT LEADING TO THIS CLEAN FIXTURE

B.rgds/Bill Ren
Dir: 0086-10-58790619
Mob: 0086-13911025798
Msn: billren renbo@hotmail.com